I please the court, Frank Weiser, on behalf of the appellants. Before I start the substantive argument, I do have to inform the court, unfortunately, sadly, Mr. Ghosh passed away several months ago from heart failure, which, from the standpoint of the court, I was ill in the interim also, but from the standpoint of the court, I think it raises some serious standing issues. There's no estate? There's no estate that's been opened, and in my questioning of family relatives, Ms. Dada, who is his former wife, but who had a relationship with him, I couldn't get any indication they were going to open up an estate. It seems he didn't have a great deal of assets. It's got this one. It's got the shows of action here. Pardon me? It's got the, it may have an asset if we rule your way. I understand, Your Honor. There is a trust, and I know that there is a trust, and a pour-over will, a local living trust that had some inter vivos aspects to it that the will would pour over whatever assets. Ms. Dada indicated to me that the stock is now held in the trust. She is the substitute trustee, so I'm not sure that the She's a plaintiff here, though. She's a plaintiff, yes. Right. And she's also Investment USA, which, and I think there was a claim by, she responded, by the appellees that Mr. Gulsh anyway didn't have standing for the aspect. So I think that Investment USA probably does have standing still. And her being the substitute trustee, I don't think it requires necessarily that the court substitute her in, per se. Investment USA is just there, and she is the stockholder. Well, thank you for informing us. Okay. I also want to indicate that the RICO claim, I think, is correct, that it was probably dismissed. I'm going to waive that right now. I don't think there's any factual allegations as to the predicate acts. Correct. And looking at the bargain case, I think— Whatever RICO covers, it doesn't cover this. Pardon me? Whatever RICO covers, and I'm not sure anybody knows, it doesn't cover this. Okay. As far as the 42 U.S.C. 1982 claim, there I do take issue. And the reason why I take issue, and there are multiple issues that have been raised there, number one, as far as the Iqbal standard, and I think that goes hand-in-hand with the Tuomint standard. I respectfully disagree with the district court's indication that there had to be any detailed factual allegations as to the information and belief. I think there were sufficient allegations that the bank had treated Korean clients different than they had Mr. Ghosh, who was also a member of, and I'm going to argue, a member of protected class under 42 U.S.C. 1982. Were there allegations in the complaint linking that differential in treatment to Mr. Ghosh's ethnicity or race? I'm sorry? Were there allegations in the complaint linking the differential in treatment of Korean-American clients to Mr. Ghosh's race or ethnicity? I think there was allegations that Mr. Ghosh was the sole shareholder of Investments USA, that Investments USA was treated differently than other Korean clients of the bank, and I think that gets into the imputed racial identity argument that was raised by his colleague. So you're linking it by inference. There's no explicit allegation that Investments was treated differently than Korean-American clients because of Mr. Ghosh's race. That's correct, but it's my understanding that, and I think there are two theories under the Sun Microsystems case that was cited by the appellee by the bank. And one theory is it's the imputed racial identity. Actually, let me back up. The Divergeness case talks about indirect discriminatory-type conduct in which, for example, a corporation, let's say, that would have contracts with a minority protected under 42 U.S.C. 1982. And that indicated that the corporation would have standing in that indirect type of relationship. But the Sun Microsystems case gave two other additional theories. One was under the, I think it was the Hembach case, in which that was a Second Circuit case. The Divergence was a First Circuit case. But the Hembach case said that it would be odd that had the individual who didn't have standing was discriminated against, but just because of the fact that the individual didn't have standing because it was a corporation that actually had the impact of the discrimination, that somehow the corporation would have standing. And so as I read the Sun Microsystems case, they say that imputed racial identity can be, in fact, inferred by the fact that the individuals who own the corporation are of a protected class. And in this case, the allegations in the complaint were that Mr. Gosch was a shareholder. Well, I'm not sure it's in the complaint, but what is the basis for the allegation that the bank discriminated against Mr. Gosch and or investments? Because, I mean, specifically, what is the evidence other than suspicion? Well, I think the allegations in the complaint were that there were an inflated appraisal that led to some, before he bought the, before investments bought the, excuse me, before the corporation bought the property, that afterwards the bank hired the interest rates, forced the foreclosure, that the type of activities that they were doing with, in terms of forcing the foreclosure and raising the interest rate, were not practices that they were doing with other clients of Korean oil. And what is the basis for the allegation that they weren't doing it for other clients? I mean, to some extent, it's a Trombley issue. The actual information belief was Ms. Dada had indicated, and had we gotten into actual discovery that there was a real estate broker, that she was, she herself is a real estate broker, that there was a real estate broker she was in contact with who had information to the effect that they were giving favorable terms in a situation like that to other individuals of Korean origin. But that wasn't in the complaint. Pardon me? That was not. What you just related to Judge Motz was not in the complaint. It was only on information belief. Right. And you didn't give the basis for that. You didn't set forth the basis for that information. No, I did not. And that's where I take issue respectfully with the standard under Iqbal, because I don't think Iqbal or Trombley totally eviscerate rule 8A. And I think Iqbal specifically states in the opinion the Supreme Court stated that it does not, rule 8A does not require, quote, detailed factual allegations. What is required is facial plausibility on the face of the complaint for a court to make the inference that there could, that there would be discrimination. And that is different than saying. I mean, it suggests that every time there's a mention of race. Well, I think that's different than saying a complaint just comes in and says, well, there's a 42. For example, the RICO claim. I agree now that the RICO claim doesn't state any facts. And to that effect, the RICO claim would be conclusory as to the ultimate claim that it was making. And that would not meet the Iqbal or Trombley standard. But I don't think that they have to give the actual information of belief. I think otherwise rule 8A is turning it on its head. I think you're then requiring not necessarily a short plain statement of the case. A lot of people say that's what Iqbal did. So what about you have another cause of action that got knocked out on later on, the 1983 claim? The 1983 claim, I think, is where I believe the real basis of the case is here. And there I do take serious issue with the fact that there were not factual issues here as far as whether there was a seizure of property without a warrant or consent, which raises a Fourth Amendment issue and that there was joint action. Explain to me the theory of joint action for purposes of the 1983 case, where you need state action. I think the joint action goes to the ‑‑ it begins with the July 31st, the July 31st party of 2010, I believe, in which the bank calls the police, the fire department comes down. There were permits that were issued in Sadarang, which was the corporation that was leasing the banquet hall. It was actually a church, but it was being used as a banquet hall. And the police come down. Mr. Lee meets with the police. They indicate that it has a permit. They leave. And then Mr. Clemmons, Dennis Clemmons, the chief inspector and another fire official were there, apparently some other fire officials, and they were given at that time a trust deed or whatever, a trustee's deed that indicated that the bank was now the owner. And they were told by Mr. Lee that they were the owner, and Mr. Clemmons indicates, or Fire Inspector Clemmons indicates, that it was his understanding that the bank was indicating to him that they were in control of the property now and that no further permit should be given. At the time of the party, both the police and the fire inspector would not close it down because there was a permit. But subsequently, after they left, with that understanding, the bank attorneys, and I believe it was Mr. Lim's firm, faxed to Mr. Clemmons an unlawful detainer action being commenced against the corporation to a victim. What he testified, he testified that he didn't remember. Let me back up and clarify a foundational issue with regard to the evidence that you're relying on, because Mr. Clemmons testified differently, right? So was the only evidence to support the factual allegation that you're relying on about the conversation between Mr. Clemmons and Unity Bank, that came from your client's declaration? No, there was actual deposition testimony directly from Mr. Clemmons, and I believe also in the supplemental excerpts of record introduced by the bank at 474 through 476. Right, but with regard to whether bank representatives asked Mr. Clemmons to stop issuing permits because Unity now is the rightful owner, with regard to that piece of evidence upon which you're now relying, Mr. Clemmons didn't testify to that. He did. He indicated he testified that the bank, he said the inference was, he said his understanding was, that the bank was, by giving him the trustee's deed upon sale, that the bank was indicating to him they were in control and that he understood, he directly testified, that he understood that they did not wish him to issue any further permits. He then testified, and that's at 474. That they preferred for him to stop issuing permits. To stop issuing permits. But wasn't he between a rock and a hard place? I mean, the policy is where there's a bona fide dispute, we're going to step aside, isn't it? I'm not sure sort of inaction becomes action. Well, I think the testimony was that temporary permits, and I don't see where that policy, whether that's correct or not, temporary permits could be issued on any basis. The Satarang was in control and was in possession of the property. But there clearly was a dispute about who was in control, and there was a background of alleged misuse that Mr. Clemens himself had observed. And didn't he go there one night and there was a, something was going on? Oh, I think the property was being, at times there was a misuse of the. And it was affecting third parties who were calling. But I think he testified clearly that on July 31st, the party, the corporation had a permit that made it legal, they were not going to close it down on that date. He also testified that they had right to temporary permits without any limit to it. And that he stopped giving those temporary, or he ordered that they be stopped given because of the fact that there was this dispute. But that dispute started, his knowledge of that dispute started by the bank telling him we have this deed of trust, we're in control. And he understood them as not wanting him to give permits. But I would indicate that he testified that the attorneys, and they're very fine attorneys, but they had faxed him the unlawful detainer papers. He didn't testify that he didn't read them. What he testified was he didn't recall reading them, which I think is then an issue of credibility. And I see all this, the issue being whether a jury is to decide this, the way the evidence, or whether a court is to decide. And I can't see under the totality of circumstances test how this can be decided by a court. Before your time runs out, can I go back to the 1982 claim for a moment? Sure. And clarify whether the complaint was ever amended. No, it was not. All right. So when the district judge knocked out the 1982 claim because she found the allegation of foundational facts, the support information or belief inadequate, she gave your client the opportunity to amend it, correct? Yes. And we stood on the complaint. We did not. And so the only issue there is whether it's sufficient in and of itself to do so, to reverse. I'll give you a minute for rebuttal, but you're over your time now. Thank you. It's not really for me to say, but as a visitor from Maryland, let me say that I appreciate the candor of your argument. Thank you. I apologize in court for not knowing before I came here. Okay. That's fine. Good morning, Your Honors. If I may please the Court. In regards to, Your Honor, Ms. Quinn's comment in regards to the deposition transcript of the detective, Inspector Clemens, that's on the court transcript, page 61, page 59, lines 19 through 21, and page 98, lines 15 through 18. And it says specifically there that there was an inference that Unity Bank did not want the permit to be renewed, but there's no specific evidence that we did not want it. It was something that he inferred. In addition, the permit... There was no explicit instruction given, look, we own the property now. This is what we want you to do. Correct? Exactly. Exactly. It was just a pure inference. Secondly, in regards to the permit that we're referring to, it's a certificate of occupancy, which was for church only. It was not for parties. It was not for raves. It was not for the use of the parking lot with four different DJs that happened to be on the property, and that's set forth in the court records that happened July 3rd and July 4th of that year. And it was based upon... And specifically because the evidentiary objection that was filed by Unity Bank specifically struck down all of the declarations based upon hearsay, which is an abuse of discretion standard. There is no evidence at all that Unity Bank in any way participated or was involved in any acts with the fire department or the police department. In addition, the law is very clear. To have a 1983 claim as a persuasive act, which within their own complaint is dealing only with a phone call or an inference that we don't want the permit to be renewed. While I do agree that it's a de novo standard, a standard of care for summary judgment, as the court is fully aware, and that's what this case boils down to, is the standard of care. Because of all the evidence has been precluded and all the hearsay evidence has been precluded, there's absolutely no evidence at all to reach the standard that a jury can make a finding that... Any trial or fact can make a finding to support their claim in regards to 1983. In regards to... As the court has pointed out, in regards to the 1982 claim, the OGBOT standard, it's very clear that it's not an inference. It has to be a reasonable inference. A reasonable inference that the defendant is liable for the misconduct alleged. If it's just a mere inference, then any information and belief could be sufficient enough. And also, OGBOT specifically states that a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement. And here, the complaint, as Appellant points out, is solely based upon information and belief. So based upon that standard, the 1982 also fails, and we don't even get into the issue as to investment in USA being a... The racial identity that's there, and the law is very clear. To get racial identity, to assert a 1982 claim, you need racial identity. The mere fact that Gauche is, you know, of a minority descent does not in itself make the case, and there's a case on point on that. It was not so plain, and so it's an academic question. Right. Help me understand thick ball on Rule 8A. Suppose it had been alleged in the complaint what was told to us today, upon information and belief, i.e., and then what we were told during the course of our argument. Would that be sufficient? The OGBOT, it's an interesting area, because under 12B6, we only look to the allegations that's pled in the complaint. And it cannot just be a naked assertion. Now, obviously, as Justice Quinn pointed out, if they would have amended the complaint and asserted all the claims that as a real estate broker... That's fine. There was no amended complaint. Right. There was no amended complaint, and what we have is the basic bare allegations. Where does it go from the bare allegations of information and belief versus, you know, I'm a real estate broker. I know this, this, and that. That's the fine line. Until, you know, we see it, we can't tell. And I think it goes back to what the Supreme Court Justice says. We don't know what pornography is. We just know it is. So, unless the Court has any further comments, I'll rest. Thank you very much. Just very briefly. Sure. In the supplemental excerpts of record at page 475 submitted by the bank, Fire Inspector Clemens is talking about when he was shown the trustee sale deed. And I would ask the Court to indulge me. I'll just read from it. 475, line 19, talking about unity. Did they express their concern about the permits? Yes. What was their concern? Concern that this property was happening without their permission. I think more they wanted to let me know the feeling that I got was that they are in control of the property and that Mrs. Goh should not be allowed to have any permits to have parties. That was the feeling I got from the whole thing. The question is, is that what they said? They didn't say those words. I can't tell you exactly the words they said. They were just letting me know that they were in charge of the building, that any issue with regards to the building should come through them. And that much did they say? Yes. Was Mr. Gosch entitled to permits for the parties? Pardon me? Was he entitled to have permits for parties? At that time, yes, he was entitled to. At the point that Inspector Clemens then stopped giving permits, she stopped asking for it because it was futile. But at that point, she was. And that party was not closed. I'm just sort of curious. It was a church hall, a banquet hall. Because it was a banquet hall, then there would have been authority for him to have the permits. I'm just curious. Why do you get permits for parties for being given? Well, I think that was a stream of income that they were able to use, that they were able to generate. But I think the ‑‑ They rented it out for parties. They rented it out for parties. Some parties were good, some parties were not. And so it came under the banquet hall. But I don't think that goes to the Fourth Amendment analysis. No, it doesn't. And so I do want to point out one last thing, is that as far as the deed of trust, Inspector Clemens said at 477 of the supplemental excerpts of the record, do you know when that decision was made? That was after the attorneys had sent him the unlawful detainer papers. Is that a decision you made? Answer, yes, it was a decision I made. Question, it was made on the basis of what? Answer, of the trust, the deed of trust, the trust deed. That was given to him directly by Mr. Lee. So whatever one's take on the case, how good the parties were or not good, I think that the issue of whether there was causation here for purposes of joint action, I do think there's sufficient evidence for jury to ‑‑ they could infer one way, they could infer the other way. And that's what summary judgment is. Thank you. With that, I would submit. All right. The matter is submitted at this time. Counsel, we appreciate your arguments.
judges: Motz, Paez, Nguyen